UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ROBERT LEE GAINES,

                       Petitioner,                    Case No. 1:13-cv-1256

v.                                           Honorable Robert Holmes Bell

MARY BERGHUIS,

                       Respondent.

_____/

## **OPINION**

        This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## **Factual Allegations**

Petitioner presently is incarcerated with the Michigan Department of Corrections at the Earnest C. Brooks Correctional Facility. Following a jury trial, Petitioner was convicted in the Kent County Circuit Court of second degree murder, MICH. COMP. LAWS §750.317. On January 9, 2012, the trial court sentenced Petitioner to a 30 to 60 year term of imprisonment.

Petitioner's conviction arose from the 1993 shooting death of eight year-old Latavia Johnson. Johnson was killed when a shot came through her kitchen window and struck her in the head. The police investigated the murder, but did not arrest Petitioner until 2011, after an accomplice, Robert Brown, confessed to participating in the crime. In addition, to Brown's confession, the police had listened to two controlled calls between Petitioner and his former girlfriend, Jennifer Tabor, who cooperated with the police. Brown and Tabor testified at Petitioner's criminal trial, as did Eric Nabors, an acquaintance whom Petitioner had called from jail.

Petitioner appealed his judgment of conviction and sentence to the Michigan Court of Appeals. In an unpublished opinion issued on January 22, 2013, the Michigan Court of Appeals rejected Petitioner's claims of error and affirmed his conviction. The Michigan Supreme Court subsequently denied his application for leave to appeal on May 28, 2013. Petitioner did not file a motion for relief from judgment under MICH. CT. R. 6.500. Petitioner timely filed the instant action on or about November 18, 2013, raising the following grounds from relief (verbatim):

> I.      Was defense cross-examination and evidence of the life circumstances and setting of a crucial witness required.
>
> II.     Over objection was the prosecutor allowed to produce testimony regarding the polygraph, lie detector.
>
> III.    Were gruesome photos inadmissible requiring a new trial.

IV.    By repeatedly arguing to the jury that during the investigation defendant had not said he is innocent did the prosecutor very effectively shift the burden of proof to defendant.

V.    Was defense counsel's failure to make proper objections and record constitutionally ineffective assistance of counsel.

(Pet., docket #1, Page ID#23-34.)

## **Discussion**

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). The inquiry is "limited to an examination

of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001); *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).

A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result; (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the facts of the case; or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply. *Bailey*, 271 F.3d at 655 (citing *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Id.* at 410.

Where the state appellate court has issued a summary affirmance, it is strongly presumed to have been made on the merits, and a federal court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *See Harrington v. Richter*, 131 S. Ct. 770, 784 (2011); *see also Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013); *Werth v. Bell*, 692 F.3d 486, 494 (6th Cir. 2012) (applying *Harrington* and holding that a summary denial of leave to

appeal by a Michigan appellate court is considered a decision on the merits entitled to AEDPA deference). The presumption, however, is not irrebuttable. *Johnson*, 133 S. Ct. at 1096. Where other circumstances indicate that the state court has not addressed the merits of a claim, the court conducts *de novo* review. *See id.* (recognizing that, among other things, if the state court only decided the issue based on a state standard different from the federal standard, the presumption arguably might be overcome); *see also Harrington*, 131 S. Ct. at 785 (noting that the presumption that the state-court's decision was on the merits "may be overcome when there is reason to think some other explanation for the state court's decision is more likely"); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## A.    Claim 1:  Evidence of Life Circumstances

### 1.    <u>Trial Court Error</u>

In his first claim, Petitioner contends that the trial court erred when it refused to allow him to ask witness Eric Nabors (Nabors), a person Petitioner called while in jail, about his life circumstances. The Michigan Court of Appeals rejected this claim as follows:

On appeal, defendant first argues that the trial court erred when it prohibited him from asking Nabors about his life circumstances. We review preserved challenges to a trial court's evidentiary rulings for an abuse of discretion. *People v Unger*, 278 Mich App 210, 216; 749 NW2d 272 (2008). An abuse of discretion occurs when a trial court's decision falls outside the range of reasonable and principled outcomes. *Id.* at 217. However, to the extent that defendant is arguing that the trial court's limitation on his recross-examination of Nabors violated his right of confrontation, the issue is unpreserved. Defendant never argued below that his right of confrontation was violated. *See People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007) ("For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court."). We review unpreserved claims of constitutional error for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

A defendant has a constitutional right to confront the witnesses against him. US Const, Am VI; Const 1963, art 1, § 20; *People v Ho*, 231 Mich App 178, 189; 585 NW2d 357 (1998). One of the primary interests protected by the Confrontation Clause is the right of cross-examination. *People v Adamski*, 198 Mich App 133, 139; 497 NW2d 546 (1993). A limitation on cross-examination that prevents a defendant from placing facts before the jury from which a witness's bias, prejudice, or lack of credibility may be inferred constitutes a denial of the right of confrontation. *People v Cunningham*, 215 Mich App 652, 657; 546 NW2d 715 (1996). However, the right of cross-examination has limits. *Adamski*, 198 Mich App at 138. The right does not encompass cross-examination on irrelevant or collateral issues. *Id.*; *People v Canter*, 197 Mich App 550, 564; 496 NW2d 336 (1992). A trial court has discretionary authority to limit the scope of cross-examination. *Canter*, 197 Mich App at 564. The court may impose reasonable limits on cross-examination to avoid confusion of the issues or to bar repetitive or marginally relevant interrogation. *Adamski*, 198 Mich App at 138.

To determine whether the trial court erred in limiting defendant's recross-examination of Nabors, this Court considers defendant's offer of proof. *See Detroit v Detroit Plaza Ltd Partnership*, 273 Mich App 260, 291; 730 NW2d 523 (2006) (an offer of proof "serves the dual purpose of informing the trial court of the nature and purpose of the evidence sought to be introduced, and of providing a basis for the appellate court to decide whether to sustain the trial court's ruling."). Much of the testimony from Nabors that defendant elicited during the offer of proof was repetitive of trial testimony that the jury had already heard from Nabors. For example, on redirect examination, when the prosecutor asked Nabors about his answers

to defense counsel's questions, Nabors had testified that he had not changed his testimony about what defendant told him outside a liquor store because he had not understood the prosecutor's questions. In addition, Nabors had testified that he knew the telephone call with defendant was recorded, that he had previously been in jail, and that it was common knowledge, based on what he knew from the street and his experience with the system, that a person should not incriminate himself or speak to the police until the person is represented by a lawyer. Because a trial court has discretion to limit cross-examination to avoid repetitive interrogation, *Adamski*, 198 Mich App at 138, the trial court did not err in limiting defendant's recross-examination of Nabors to the extent that the testimony in the offer of proof was repetitive of his trial testimony.

The only testimony that Nabors provided in the offer of proof that was not repetitive of his trial testimony was that his previous involvement with the legal system influenced the way he answered questions. Assuming that this testimony was relevant – and defendant has provided no argument explaining how it was relevant – the elicitation of this testimony was not precluded by the trial court's ruling. The trial court allowed defendant to ask Nabors whether he provided inconsistent answers to the prosecutor and defendant about what defendant told him outside a liquor store and, if he did, why he provided the inconsistent answers. This testimony by Nabors would be a further explanation for why he testified differently when questioned by the prosecutor and defendant. Defendant chose not to ask Nabors if he provided inconsistent testimony and why. Error requiring reversal cannot be error to which the appealing party contributed by plan or negligence. *People v Griffin*, 235 Mich App 27, 46; 597 NW2d 176 (1999), overruled in part on other grounds *People v Thompson*, 477 Mich 146; 730 NW2d 708 (2007).

Even if the trial court erred in preventing defendant from asking Nabors whether his involvement in the legal system influenced his trial testimony, the error was harmless. Nabors' testimony was prejudicial to defendant. His testimony regarding what defendant told him outside a liquor store suggested that defendant was involved in Latavia's murder. Moreover, there was significant evidence, aside from Nabors' testimony, to conclude that defendant committed the murder. This evidence included the testimony of Brown and Tabor and the recordings of the two controlled telephone calls between Tabor and defendant. Given this evidence, the trial court's decision to prohibit defendant from asking Nabors whether his involvement in the legal system influenced his trial testimony was harmless under the standard for preserved, nonconstitutional error, *see People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999), and the standard for unpreserved, constitutional error, *see Carines*, 460 Mich at 763-764.

*See People v. Gaines,* No. 308378, Slip Op. at 1-3 (Mich. Ct. App. Jan. 22, 2013).

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67-68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. State court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

Further, under the AEDPA, this court may not grant relief even if it would have decided the evidentiary question differently. The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000).

Petitioner has not alleged any facts suggesting that the state court's evidentiary ruling violated his due process rights, nor has he met the high standard set forth in the AEDPA. Accordingly, Petitioner's claim that the state court improperly prohibited him from asking about Nabors' life circumstances raises only a question of state law; thus it is not cognizable in these proceedings.

## 2.     **Confrontation Clause**

To the extent that Petitioner contends that the trial court's limitation on his recross-examination of Nabors violated his rights under the Confrontation Clause, this claim was procedurally defaulted because Petitioner did not raise it at trial.  Petitioner may not raise in federal court an error that he failed to raise properly in state court.  "If a petitioner does not satisfy the procedural requirements for bringing an error to the state court's attention – whether in trial, appellate, or habeas proceedings, as state law may require – procedural default will bar federal review."  *Magwood v. Patterson*, 561 U.S. 320, 130 S.Ct. 2788, 2801 (2010).  *See also  Coleman v. Thompson*, 501 U.S. 722, 729-730 (1991); *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).

Nevertheless, the U.S. Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits.  *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)). *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the

merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Where, as here, the procedural default issue raises more questions than the case on the merits, the Court may assume without deciding that there was no procedural default or that Petitioner could show cause and prejudice for that default. *See Cone v. Bell*, 243 F.3d 961, 971 (6th Cir. 2001), *rev'd on other grounds*, *Bell v. Cone*, 535 U.S. 685 (2002); *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999).

The Sixth Amendment guarantees the right of an accused in a state criminal prosecution "to be confronted with the witnesses against him." U.S. Const. amend. VI; *see also Pointer v. Texas*, 380 U.S. 400, 407-08 (1965). Cross-examination is a "primary interest secured" by the Confrontation Clause. *Douglas v. Alabama*, 380 U.S. 415, 418 (1965); *see also Davis v. Alaska*, 415 U.S. 308, 315-16 (1974). However, "the Constitution entitles a criminal defendant to a fair trial, not a perfect one." *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986).

The Supreme Court "ha[s] recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Davis*, 415 U.S. at 316-17. Accordingly, "a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.'" *Van Arsdall*, 475 U.S. at 680 (quoting *Davis*, 415 U.S. at 318). Nevertheless, "trial judges retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally

relevant." *Delaware v. Van Arsdall*, 475 U.S. at 679. "[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.* (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985); *see also Davis*, 415 U.S. at 316 ("Cross-examination is . . . [s]ubject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation. . . .").

Where "it is merely the extent of cross-examination that is limited, the trial judge retains a much wider latitude of discretion. Once cross examination reveals sufficient information to appraise the witness' veracity, confrontation demands are satisfied." *Boggs v. Collins*, 226 F.3d 728, 736 (6th Cir. 2000) (quoting *Dorsey v. Parke*, 872 F.2d 163, 167 (6th Cir. 1989)) (internal quotation marks omitted). Thus, where a trial court limits a defendant's cross-examination, the court must balance the limitation against "the competing interests at stake." *Lewis v. Wilkinson*, 307 F.3d 413, 421 (6th Cir. 2002) (internal quotation marks omitted). These interests include the prevention of minitrials on collateral issues, *see id.* at 422; the probative or material value of the evidence toward the issues at trial, *see id.*; as well as the extent to which the defendant was able to cross-examine the witness, *United States v. Hynes*, 467 F.3d 951, 959–60 (6th Cir. 2006); *Boggs v. Collins*, 226 F.3d 728, 745 (6th Cir. 2000).

The crux of the confrontation clause issue is whether Petitioner's trial counsel should have had the opportunity to present to the jury the following testimony by Nabors, which was elicited outside the presence of the jury during defense counsel's offer of proof:

> MR. BEASON (Petitioner's trial counsel): Does your upbringing on the street or your being involved with the system influence the way you answer questions today?
>
> THE WITNESS (Nabors): Yes.

MR. BEASON: How is that?

THE WITNESS: Because, like I said, I've been through all this before, you know, trial and all this stuff, and that's about it.

MR. BEASON: All of what stuff?

THE WITNESS: Like this whole trial and everything, so I did this before.

MR. BEASON: You never went to trial before?

THE WITNESS: Yeah, I have.

MR. BEASON: How many trials have you gone through?

THE WITNESS: Two.

MR. BEASON: So you had benefit of counsel in both those trials?

THE WITNESS: Say that one more time.

MR. BEASON: Attorney, the benefit of a lawyer.

THE WITNESS: Yes, yes.

MR. BEASON: So when Ms. Koncki (the prosecutor) asked you about the telephone conversation being recorded, you said you knew that, the conversation was being recorded with Mr. Gaines?

THE WITNESS: Yes.

MR. BEASON: Did that come from experience inside the jail –

THE WITNESS: Yes.

MR. BEASON: – or on the street, your upbringing?

THE WITNESS: Inside the jail.

MR. BEASON: Inside the jail.

THE WITNESS: Yeah.

MR. BEASON: That's all I have for the record, your Honor.

(docket #1-1, Page ID##68-69.)

Petitioner contends that this testimony was necessary because it "put [Nabors] in his setting of being from the street or from the neighborhood or telling stories or testifying about events is not unusual" which would have explained why "during cross-examination it appeared that Eric Nabors was changing his story to go with whichever party was asking the questions." (docket #1-1, Page ID#24.)  Yet, the questions counsel asked in his offer of proof neither explained why Nabors might "change his story" nor demonstrated that "being from the street or from the neighborhood" influenced how Nabors testified.  Rather, Nabors' testimony in the offer of proof merely explained that his previous involvement with the legal system influenced the way that he testified and because Nabors had been in jail before he understood that Gaines' telephone call from jail was being recorded.  Petitioner fails to explain why this testimony was relevant or how it was probative of the issues at trial.

Moreover, the trial court never limited Petitioner's opportunity on recross-examination to question Nabors about conflicts in his testimony.  Prior to the offer of proof, the Court and defense counsel engaged in the following exchange:

> MR. BEASON: And, if he says, "I'm telling you the truth," or vice versa, "I'm telling Ms. Koncki the truth," why?  Why are you – why are you –
>
> THE COURT: Fine ask him why.  And then – but I don't – I'm not going to let you go into "Aren't you from the street?  Didn't you grow up in the tough neighborhood?"  You know, you can ask, "Are you telling me the truth, or are you telling Ms. Koncki the truth?"  That's [a] perfectly legitimate recross question, in my estimation.  I'm very comfortable with that, Mr. Beason.  I'm very uncomfortable with, you know, aren't you – because somebody grew up on one street and one zip code as opposed to another street and another zip

-13-

code does not make it such that they all of a sudden have a license to come in and talk differently.

(docket #1-1, Page ID#68.)

After defense counsel made his offer of proof, the trial court ruled that:

All right, the Court's ruling is as follows: The Court is going to allow Mr. Beason to ask the following: One, "Did you testify differently when you answered the questions of Ms. Koncki and I?" Whatever his answer is, yes or no. And then, two, "Why did you do it?" And then let him explain it. That's the Court's ruling.

(*Id.* at Page ID#69.)

The trial court's limitation was narrow and did not substantially impair Petitioner's ability to question Nabors' credibility or motives for testifying. *See Stewart v. Wolfenbarger*, 468 F.3d 338, 347 (6th Cir. 2006) ( "Where the trial court limits the extent of cross-examination, the inquiry for the reviewing court is whether the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory.") (quotation omitted). The Michigan Court of Appeals' holding that Petitioner's constitutional rights were not violated was reasonable in its application of, and consistent with, federal law.

### B.  Claims II and III:  Admission of Statement Regarding Polygraph Examination and Gruesome Crime Scene Photographs

Petitioner asserts two additional claims based on evidentiary rulings by the trial court. As fully discussed above, '[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.' *Id.* at 68." Whether evidence was properly admitted or improperly excluded under state law 'is no part of the federal court's habeas review of a state conviction.'" *Estelle*, 502 U.S. at 67-68. Moreover,

state-court evidentiary rulings cannot rise to the level of due process violations unless they offend some fundamental principle of justice, *Seymour v. Walker*, 224 F.3d at 552.

### 1. Polygraph Examination

In Claim II, Petitioner contends that the trial court erred when it admitted a statement Petitioner made to Jennifer Tabor, his former girlfriend, during a tape-recorded telephone call wherein Petitioner advised Tabor to say "[h]ell, no" if asked to take a polygraph examination. The Michigan Court of Appeals rejected this claim as follows:

> Defendant next argues that the trial court erred when it allowed the admission of his statement to Tabor during a controlled telephone call that she should say "[h]ell, no" if asked to take a polygraph examination. We review this evidentiary decision for an abuse of discretion. *Unger*, 278 Mich App at 216.

> Evidence concerning the results of a polygraph examination is not admissible at trial. *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003). Defendant relies on this bright-line rule in arguing that the trial court erred in admitting his statement to Tabor. However, no evidence was presented that defendant or any witness was offered or had taken a polygraph examination.

> Evidence of a defendant's efforts to influence a witness is admissible if the evidence demonstrates consciousness of guilt. *People v Schaw*, 288 Mich App 231, 237; 791 NW2d 743 (2010). Defendant's statement to Tabor that she should say "[h]ell, no" to any request to take a polygraph examination demonstrates a consciousness of guilt, especially where Tabor testified that defendant told her the night of Latavia's murder that, after he and Brown chased the people with whom they had been in an altercation to a house, Brown shot into the house and "someone small" fell. *See Schaw*, 288 Mich App at 237-238 (the defendant's efforts to manipulate his wife into lying to the police were highly probative of a consciousness of guilt). In addition, defendant's statement to Tabor impeached his testimony that he never asked Tabor to lie for him in the controlled telephone call. Further, the trial court's cautionary instruction prevented the jury from considering defendant's statement for any purpose other than determining what was said during the controlled telephone call. Jurors are presumed to follow their instructions. *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Under these circumstances, the trial court's decision to admit defendant's statement to Tabor that she should say "[h]ell, no" to any request

to take a polygraph examination fell within the range of reasonable and principled outcomes.

*Gaines*, slip.op. at 3.

Petitioner has not alleged any facts to show that the state trial court's evidentiary ruling offends a fundamental principle of justice. Accordingly, Petitioner's claim that the state court erred when it admitted his statement to Tabor regarding a polygraph examination raises only a question of state law; thus, it is not cognizable in these proceedings. Consequently, Claim II is not a meritorious claim.

## 2.     Crime Scene Photographs

In Claim III, Petitioner contends that the trial court erred when it admitted into evidence two graphic photographs of the eight-year old murder victim. The Michigan Court of Appeals rejected this claim as follows:

> Defendant also claims that the trial court erred when it admitted into evidence two gruesome photographs of Latavia's body on the kitchen floor. According to defendant, the photographs were inadmissible because he never challenged the evidence of the brutal manner in which Latavia was killed. Rather, he challenged only the evidence that he was involved in the murder. We review the trial court's evidentiary decision for an abuse of discretion. *Unger*, 278 Mich App at 216.

> When a defendant pleads not guilty to the charged crime, all the elements of the crime are at issue. *People v Mills*, 450 Mich 61, 69; 537 NW2d 909 (1995). The prosecution carries the burden to prove each element of the crime beyond a reasonable doubt, regardless whether the defendant specifically disputes an element. *Id*. at 69-70. Thus, regardless whether defendant contested the manner in which Latavia was killed, the prosecutor was not only required to prove defendant's involvement in the murder, but also that Latavia was murdered and that the requisite intent element was present.

> The photographs were clearly relevant. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. First, because

the photographs showed the nature of Latavia's injuries, they were helpful in proving the shooter's intent. *See People v Gayheart*, 285 Mich App 202, 227; 776 NW2d 330 (2009). Second, the photographs corroborated the testimony of witnesses. Photographs may be used to corroborate a witness's testimony. *Mills*, 450 Mich at 76. Officer Mark Smalla, who was one of the first officers at the house, testified that, based on the condition of Latavia, it was obvious that Latavia was deceased. The two photographs, which showed how Latavia's body was found, corroborated Smalla's testimony. In addition, Officer Brian Reed, a crime scene technician, testified that wadding from a shotgun shell was found near Latavia's body. He drew a circle on one of the photographs around the wadding. Further, one of the photographs showed that Latavia's body was found near the refrigerator and that the refrigerator door was open. The photograph, therefore, provided support to Tabor's testimony that defendant told her that Brown shot into the house after a light went on inside the house. Because the photographs were relevant, the trial court did not abuse its discretion in admitting them. *Unger*, 278 Mich App at 216.

*Gaines*, slip.op. at 3-4.

Petitioner has not demonstrated that the state trial court's evidentiary rulings offended a fundamental principle of justice. Accordingly, Petitioner's claim that the state court erred when it admitted gruesome photographs of the murder victim raises only a question of state law; thus, it is not cognizable in these proceedings. Consequently, Claims III is not a meritorious claims.

## C.     Claim IV:  Prosecutorial Misconduct During Closing Argument

Petitioner claims that the prosecutor shifted the burden of proof when she argued that Petitioner's words and actions were not those of an innocent man. (docket #1-1, Page ID#32-33). The Michigan Court of Appeals rejected this claim as follows:

Defendant claims that the prosecutor, by arguing during closing arguments that defendant never said he was innocent during the investigation, shifted the burden of proof. Because defendant did not make a contemporaneous objection to the prosecutor's alleged improper argument, the claim of prosecutorial misconduct is not preserved. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). We review unpreserved claims of prosecutorial misconduct for plain error affecting the defendant's substantial rights. *People v Ackerman*, 257 Mich App 434, 448; 669 NW2d 818 (2003).

-17-

The test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial. *People v Mesik* (On Reconsideration), 285 Mich App 535, 541; 775 NW2d 857 (2009). We review claims of prosecutorial misconduct on a case-by-case basis, examining the prosecutor's challenged remarks in context. *People v McLaughlin*, 258 Mich App 635, 644; 672 NW2d 860 (2003).

A prosecutor may not attempt to shift the burden of proof. *Abraham*, 256 Mich App at 273. When a prosecutor implies that a defendant must prove something or present a reasonable explanation for damaging evidence or when a prosecutor comments on the defendant's failure to present evidence, such arguments tend to shift the burden of proof. *People v Fyda*, 288 Mich App 446, 463-464; 793 NW2d 712 (2010). Here, in the challenged remarks, the prosecutor did not attempt to shift the burden of proof to defendant. The prosecutor did not imply that defendant needed to prove anything or present a reasonable explanation for certain evidence, nor did the prosecutor comment on defendant's failure to present evidence. Rather, the prosecutor argued that defendant's statements at an investigative interview, as well as his statements to Tabor in the two controlled telephone calls and to Nabors in his telephone call from jail, were inconsistent with his claim of innocence. A prosecutor is free to argue the evidence and all reasonable inferences from it as they relate to the prosecutor's theory of the case. *People v Parker*, 288 Mich App 500, 510; 795 NW2d 596 (2010).

However, the essence of defendant's argument is not that the prosecutor attempted to shift the burden of proof, but that the prosecutor improperly commented on defendant's prearrest silence. Defendant relies on *Combs v Coyle*, 205 F3d 269, 283 (CA 6, 2000), wherein the Sixth Circuit held that the use of a defendant's prearrest silence as substantive evidence of guilt violates the defendant's Fifth Amendment right against self-incrimination. Contrary to defendant's claim, the present case does not involve any prearrest silence by defendant. Here, no evidence was presented that defendant chose not to speak to a police officer, or that defendant stated that he wished to remain silent, or that he wished to remain silent until an attorney was appointed for him. Defendant makes no argument that the admission of his statements from the investigative interview, or from any of the recorded telephone calls, violated his constitutional rights. As already stated, the prosecutor, in the challenged remarks, argued that defendant's statements at the investigative interview, in the two controlled telephone calls by Tabor, and in his telephone call to Nabors from jail, were not consistent with defendant's claim of innocence. Because the prosecutor was merely arguing the evidence as it pertained to her theory of the case, the remarks

were proper. *Parker*, 288 Mich App at 510. There was no prosecutorial misconduct.

*Gaines*, slip op. at 4-5.

This claim is procedurally defaulted. The Michigan Court of Appeals expressly relied on Michigan's contemporaneous objection rule in denying Petitioner's claim. It is clear that the contemporaneous objection rule was well-established at the time of Petitioner's trial. *See, e.g.*, *People v. Kelly*, 378 N.W.2d 365, 369-70 (Mich. 1985). Petitioner's failure to comply with the state's independent and adequate state procedural rule, *i.e.*, making a contemporaneous objection, caused him to default his claims in state court. *See Wainwright v. Sykes*, 433 U.S. 72, 86-88 (1977).

Nevertheless, as explained above, the federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits. *See Hudson*, 351 F.3d at 216. *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

Petitioner claims that the prosecutor's closing argument shifted the burden of proof because the prosecutor "may not offer silence as evidence in this case in chief and then argue it to the jury as guilt." (docket #1-1, Page ID#33.) Petitioner believes that the following passages from the prosecutor's closing argument shifted the burden:

> Its in his words more than anything, more than anything, because throughout this investigation and throughout the trial, his action and words are not those of an innocent man. Not even close.

> And there's other things in the course of that he lies about, and it will be apparent to you if you watch that, but why lie about anything if you're innocent?

> Best evidence is [Petitioner's] own words, investigative subpoena, disclosure to Nabors, first recorded call with Tabor, second one with Tabor, the jail call

-19-

to Nabors. These are at all times when he showed his true colors not once does he say I am innocent, in any of those recordings. Not once.

The words he says are clearly not the words of an innocent man. He never says these people are lying on my, these people are snitching on me. Not once.

This crazy gal calls you from the past and she starts talking about, the police come to her on a murder, and you tell her it's okay to just say you don't know nothing and you just start chatting? Are those the action and words of an innocent person? Not a chance.

She says, "Like if anybody had seen you guys, they would have said something a long time ago. 'Right.' Is that what an innocent person says? 'Right.'

Would you say that if you're not guilty, after being confronted – I know you get this – being confronted, that Brown is pointing the finger at him, admitted Brown was involved. Admitted, confessed to it, but he's saying Gaines shot.

Nobody warns him oh, I'm sorry, Nabors warns him, "Don't incriminate yourself." [Petitioner] responds, 'Right.' If you did nothing, you can't incriminate yourself, can you? What the defendant doesn't say is just as revealing. Just as revealing. He never says, I'm innocent. He never says, "I've been framed. He never tells you anything. Not once, in any of these recorded statements.

(docket 1-1, Page ID##32-33.)

After the prosecutor's argument, the Court *sua sponte* gave the following curative

instruction:

THE COURT: All right. We're just about done for the day, Ladies and Gentlemen. Just a quick thing. Both very capable counsel have provided very capable arguments, and they're very well presented. I want to thank you both for it. As I said previously, though, I want to just remind you, the lawyer's arguments are not evidence. To the extent we heard any comments about Ms. Koncki commenting about what the defendant could have said or didn't say, that is fair commentary on his testimony. It is not an attempt by the prosecution to shift the burden , and I just want to make sure she is not trying to do that by any stretch of imagination. It's fair argument.

(docket #1-1, Page ID#33.)

-20-

After instructing the jury, the trial court explained its reason for giving the instruction stating:

> All right. Briefly, continuing on the record, I just want to memorialize a sidebar that we had shortly before. It was around – I don't know what time it was. It was after Ms. Koncki completed her rebuttal, and I called it because I wanted to give the instruction that I ultimately did beyond the draft instructions. Ms. Koncki strongly objected to it, felt that it was unfair and inappropriate. Let's see, I was asked have I ever don't that before, and I advised her, yes, I've done it many times.
>
> At any rate, the reason I have it is because of there is such a plethora of appellate case law not that the issue *de jure* is prosecutorial misconduct in closing arguments when the accused chooses to put in a case, and the defense, or I'm sorry, then the prosecution, I think very fairly comments on it, and comments about what they could have done or what they couldn't have done or didn't do.

(*Id.*)

The scope of review in a habeas corpus action of prosecutorial misconduct is narrow. A petitioner must do more than show erroneous conduct. "The relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. De Christoforo*, 416 U.S. 637, 643 (1974)). The habeas court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental. *See United States v. Young*, 470 U.S. 1, 11-12 (1985). In addition, the court may view any misconduct in light of the strength of the competent proofs tending to establish guilt. *See Angel v. Overburg*, 682 F.2d 605, 608 (6th Cir. 1982) (*en banc*). "The touchstone of due-process analysis is the fairness of the trial, not the culpability of the prosecutor." *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir.

1993) (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)). Consequently, the giving of cautionary instructions is relevant to determining whether fundamental fairness was denied. *Id.* at 1356.

The court of appeals found that the prosecutor's comments were not improper because they did not shift the burden of proof but merely commented on Petitioner's statements at the investigative interview, in the recorded calls with Tabor and in the call to Nabors from jail. Even if they were improper however, Petitioner has failed to demonstrate how the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process *(Darden*, 477 U.S. at 181); particularly, in light of the court's cautionary instruction. In addition, as the court of appeals found, Petitioner's argument is not so much that the prosecutor shifted the burden of proof, but that the prosecutor "offer[ed] silence as evidence in th[e] case in chief and then argue[d] it to the jury as guilt." (docket #1-1, Page ID#33.) In *Combs v. Coyle*, 205 F.3d 269 (6th Cir. 2000), a case relied on by Petitioner in his brief on direct appeal (*see* docket #1-1, Page ID#82), the Sixth Circuit held that "the use of a defendant's prearrest silence as substantive evidence of guilt violates the Fifth Amendment's privilege against self-incrimination." *Id.* at 283. In this case however, there was no evidence regarding any prearrest silence by Petitioner. *Gaines*, slip op. at 5. Moreover, even if such evidence had been admitted, the prosecutor did not comment on it and Petitioner does not claim otherwise. Consequently, Claim IV is not a meritorious claim.

### D.    Claim V: Ineffective Assistance of Counsel

In Claim V of the petition, Petitioner contends that his trial counsel was ineffective based on the following three grounds: (1) trial counsel failed to cross examine Nabors regarding his life circumstances; (2) trial counsel's questioning of Petitioner led to the admission of Petitioner's statement to Tabor regarding a polygraph examination; (3) trial counsel was ineffective in connection

with the "burden shifting" comments the prosecutor made in her closing argument.[1]  The Michigan

Court of Appeals rejected this claim as follows:

> Defendant asserts that he received ineffective assistance of counsel as it related to counsel being unable to ask Nabors whether he grew up on the street.  However, defendant fails to explain how counsel's performance was deficient.  Notably, the trial court sustained the prosecutor's objection to counsel's question to Nabors, counsel made an offer of proof of Nabors's testimony, and defendant agreed with counsel's decision not to ask Nabors whether Nabors provided different answers to the prosecutor and defense counsel and, if so, why.  Defendant has not shown that counsel's performance was deficient in regard to the cross-examination of Nabors.  *Uphaus* (On Remand), 278 Mich App at 185.

> Defendant also asserts that he received ineffective assistance of counsel as it related to the trial court admitting defendant's statement to Tabor in the second controlled telephone call that she should say "[h]ell, no" to any request to take a polygraph examination.  Defendant does not explain how counsel's performance was deficient.  We assume, however, that defendant is arguing that defense counsel was ineffective because counsel asked defendant whether he ever told Tabor to lie in the second controlled telephone call, which was the question that led the trial court to grant the prosecutor's request to admit defendant's statement to Tabor.  The argument is without merit.  "The questioning of a witness is presumed to be a matter of trial strategy." *People v Petri*, 279 Mich App 407, 413; 760 NW2d 882 (2008). Defense counsel believed that his examination of defendant had "stayed away" from the polygraph issue.  Counsel is not ineffective simply because a chosen strategy does not work. *People v Matuszak*, 263 Mich App 42, 61; 687 NW2d 342 (2004).  Moreover, we will not assess counsel's competence with the benefit of hindsight. *Petri*, 279 Mich App at 411.  Accordingly, defendant has not overcome the presumption that counsel's performance in asking defendant whether he told Tabor in the second controlled telephone call to lie for him fell below an objective standard of reasonableness.

> Defendant further asserts that he received ineffective assistance of counsel as it related to the prosecutor's argument that defendant's statements in the investigative interview and in telephone calls with Tabor and Nabors were inconsistent with his claim of innocence.  Again, defendant does not specify how counsel's performance was deficient, but we assume that

---

[1] On direct appeal, Petitioner raised ineffective assistance with respect to the issues raised in Claims I, II and IV.  Although, Petitioner states that "[i]neffective assistance is raised in Issue II, II and IV supra." (docket #1-1, Page ID# 34), the Court assumes Petitioner intends to raise the same claims in the instant petition that he raised on direct appeal.

defendant is arguing that counsel should have objected to the prosecutor's argument. However, because the prosecutor's argument did not shift the burden of proof and, contrary to defendant's assertion, there was no comment on any prearrest silence by defendant, any objection would have been futile. Counsel is not ineffective for failing to make a futile objection. *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998). Defendant was not denied the effective assistance of counsel.

*Gaines*, slip. op. at 7.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. The two-prong *Strickland* test applies to claims of ineffectiveness brought against both trial and appellate counsel. *See Strickland*, 466 U.S. at 687-696 (examining conduct of trial counsel); *Smith v. Murray*, 477 U.S. 527, 535-536 (1986) (applying *Strickland* to claim of attorney error on appeal).

A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court recently has observed, while "'[s]urmounting *Strickland*'s high bar is never an easy task,' . . . [e]stablishing that a state court's application was unreasonable under § 2254(d) is all the more difficult." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). Because the standards under both *Strickland* and § 2254(d) are highly deferential, "when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S. Ct. at 788 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). In those circumstances, "[t]he question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

### 1.    Failure to Identify Deficiency

As the court of appeals noted, Petitioner fails to explain how counsel's performance was deficient with respect to any of the grounds he raises in his ineffective assistance claim. This fact alone precludes habeas relief. *See Strickland v. Washington*, 466 U.S. at 690 ("A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." ) Nevertheless, the Court will examine each of the grounds Petitioner raises in turn.

### 2.    Nabors' Life Circumstances

Just as the court of appeals did, the Court assumes that Petitioner would have claimed that counsel was ineffective for failing to cross-examine Nabors about his life circumstances and failing to raise a Confrontation Clause claim. To the extent Petitioner bases this claim on the state court's evidentiary ruling which precluded counsel from questioning Nabors about his life circumstances, he fails to state a meritorious claim. On habeas review, this Court is bound by determinations of state law announced by a state appellate court on direct review. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). The Michigan Court of Appeals held that the trial court's

evidentiary ruling did not improperly prohibit Petitioner from asking about Nabors' life circumstances during recross-examination. In light of this binding determination, this Court cannot say that counsel's failure to question Nabors about his life circumstances amounted to ineffective assistance of counsel.

To the extent that Petitioner's ineffective assistance claim is based on defense counsel's failure to raise a Confrontation Clause claim, this claim is also without merit. Counsel cannot be deficient because, as previously discussed, Petitioner's rights under the Confrontation Clause were not violated. *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010) (counsel not ineffective for failing to make meritless motion.) Further, as previously discussed, Petitioner cannot demonstrate the requisite prejudice because he cannot show how Nabors' life experience testimony would have explained conflicts in the rest of his testimony.

### 3.    Polygraph Examination

The Court assumes that Petitioner would argue that counsel was ineffective for asking, during his direct examination, if Petitioner ever told Tabor to lie. This was the question that led the trial court to grant the prosecutor's request to admit Petitioner's statement to Tabor that "If they ask you to take a polygraph and all that, tell them hell no." (*Id.* at Page ID#29.) Immediately thereafter, the trial court gave a limiting instruction regarding the irrelevance and inadmissibility of polygraph examinations.[2]

---

[2]The trial court stated:

> THE COURT: All right. We're continuing on the record in the matter of People v. Gaines. I did meet with counsel in chambers and Mr. Beason continues to strenuously object to my allowing the one reference to the polygraph, and I understand that, and it's respectfully overruled with the qualifications I indicated previously. What we've agreed is that Mr. Beason is going to continue his exam, he going to ask some questions. After he is done with his exam, I am going to the [sic] instruct in limine the jury the words to [the] effect as follows: Ladies and Gentlemen, toward the end of Mr. Gaines' testimony we heard some reference to polygraph. You need to understand polygraphs are inadmissible in court and the

(continued...)

As the court of appeals explained, counsel believed that he had "stayed away" from the polygraph issue. *Gaines*, slip op. at 7. The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. *See Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) (an ineffective assistance of counsel claim "cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken").

Moreover, even if his counsel's performance was deficient, Petitioner has failed to sufficiently establish prejudice. Petitioner argues that the polygraph evidence was prejudicial because it "clearly conveyed to the jury . . . that Tabor's testimony . . . was truthful and . . . bolster[ed] Tabor's credibility." (docket 1-1, Page ID#29.) However, as the Michigan Court of Appeals recognized, "no evidence was presented that defendant or any witness was offered or had taken a polygraph examination." *Gaines*, slip op. at 3. Thus, there was no polygraph evidence to prejudice Petitioner.

Furthermore, the trial court gave a limiting instruction advising the jury that polygraph examinations are inadmissible and explaining that the polygraph testimony was allowed only so that the jury could fully consider the content of the recorded call between Petitioner and Tabor. "A jury is presumed to follow its instructions." *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)). Accordingly, the jury would not have considered the utterance of the word polygraph in the context of Petitioner's statement to Tabor as tending to bolster Tabor's credibility or truthfulness. Consequently, Petitioner's claim that counsel

---

[2](...continued)

> only reason the Court allowed that question was to allow you to fully consider what was said on the telephone call. Any further inquiry regarding the polygraph, . . . are irrelevant and inadmissible, or words to that effect.

(*Id*. at Page ID#28.)

was ineffective for questioning Petitioner in a way that led to the admission of Petitioner's statement to Tabor regarding a polygraph examination is without merit.

### 4.    Prosecutor's Closing Argument

The Court assumes Petitioner intends to argue that his trial counsel's performance was deficient for failing to object to the prosecutor's closing argument. Because, as previously discussed, the prosecutor's comments did not shift the burden, trial counsel was not deficient for failing to object to the comments. *See Biggs v. United States*, 3 Fed. App'x. 445, 449 (6th Cir. 2001) ("Counsel could not have been ineffective in failing to raise a futile objection.") Accordingly, Petitioner's counsel was not ineffective in failing to object to the prosecutor's argument.

Consequently, and for all the foregoing reasons, Petitioner claim of ineffective assistance of cousel is without merit.

### Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

### Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat

anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.

Dated: <u>January 30, 2014</u>　　　　　　　　<u>/s/ Robert Holmes Bell</u>
　　　　　　　　　　　　　　　　　　　ROBERT HOLMES BELL
　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE